IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES R. KAMMEYER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-00454-JPG |
| | ) |
| WILLIAM TRUE, | ) |
| D. STICKELS, | ) |
| DANIEL HUGGINS, | ) |
| UNITED STATES OF AMERICA, and | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff James Kammeyer, an inmate with the Federal Bureau of Prisons ("BOP") who is currently incarcerated at the United States Penitentiary located in Marion, Illinois ("USP Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority that occurred in connection with prison restrictions imposed after several incidents involving drug overdoses. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 -2680. Plaintiff seeks injunctive and monetary relief and has filed a motion to certify the Complaint as a class action on behalf of all inmates housed at USP Marion.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for

1

money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

In the Complaint, Plaintiff makes the following allegations: In March of 2019, a number of inmates at USP Marion suffered overdoses from ingesting mixtures of synthetic drugs and industrial chemicals. (Doc. 1, pp. 3-4). As a result of the overdoses, USP Marion was placed on lockdown status from March 30, 2019, until April 8, 2019, and additional restrictions were implemented. *Id.* at p. 4. Plaintiff received a memo written and signed by Warden True, on April 1, 2019, announcing that the entire inmate population would be sanctioned for the drug abuse. *Id.* Specifically, inmates would be limited to one five-minute phone call and five outgoing emails per day, and the monthly commissary spending limit would be reduced from $360 a month to $100. *Id.; see also* Doc. 1-1, p. 3. Additionally, any inmate caught with drugs would be referred for prosecution. *Id.* The next day, Plaintiff received a second memo directing all inmates to pack three trash bags with their personal belongings: (1) one for personal property; (2) one for institution-issued clothing; and (3) one for excess personal property, which could be mailed home at the inmate's own expense. (Doc. 1, p. 4; *see also* Doc. 1-1, p. 5). After all inmates packed their bags, USP Marion staff conducted a shakedown of the entire facility on April 3 and 4, 2019. *Id.* Captain Stickles supervised staff during the shakedown in Plaintiff's housing unit. *Id.* at p. 5. During the shakedown, staff threw away excess personal property that did not fit into a bag into trash bins. *Id.* Staff did not provide information regarding the ability to mail excess property home or provide confiscation forms for any property seized in accordance with BOP policy. *Id.* Staff

also destroyed all microwave ovens in inmate housing units that had been purchased with inmate funds. *Id.*

After the lockdown ended on April 9, 2019, more inmates overdosed and Warden True issued another memo lowering the monthly commissary spending limit to $75. *Id.*; *see also* Doc. 1-1, p. 7.

During the week of April 8, 2019, Plaintiff witnessed Warden True in the lunchroom become hostile toward inmates trying to speak with him. *Id.* at p. 6. He also heard Warden True tell inmates that "he wanted the drug problem solved 'however [inmates] have to do it,'… and that if the inmates wanted the mass sanctions lifted, inmates should 'enforce the rules' against other inmates who were suspected drug users or distributors." *Id.*

Warden True, Captain Stickles, and Chief Technician for the Special Investigative Services Huggins met collectively and individually with the heads of various inmate groups around April 11, 2019, and "instructed them to 'police [their] own.' If inmates continued overdosing, they said, just drag them into a cell 'so we don't see it.'" *Id.* Warden True stated that there would not be consequences for anyone who acted, even violently, against drug users. *Id.* This authorized self-enforcement has resulted in an increased number of violent attacks at USP Marion. *Id.* at p. 7. After one violent incident between inmates, staff had to close an entire housing unit and temporarily relocate the occupants for hours to clean up the blood. *Id.*

Warden True has since threatened to implement further restrictions and lockdown the facility if inmates do not take part in stopping the drug abuse problem. *Id.* Inmates, including Plaintiff, attempted to organize a food strike in protest of the restrictions. *Id.* at p. 8. Plaintiff was threatened with retaliation by True, Stickles, Huggins, and other staff if he participated, and also

threatened with violence by other inmates if he did not participate. *Id*. Ultimately, Plaintiff did not participate. *Id.*

Due to the threats of violence by other inmates instigated by True, Stickles, and Huggins and the retaliation against inmates by staff, Plaintiff has suffered severe anxiety. *Id.* Plaintiff claims that the various forms of mass punishment and directing inmates to self-regulate the drug problem on the part of Defendants has caused fear, mental anguish, and misery, exacerbating the violent conditions of prison life. *Id.* at pp. 1, 8-9. True, Stickles, and Huggins have displayed deliberate indifference by encouraging the violence and "turning a blind eye when such assaults occur." *Id.* at p. 9.

## **Preliminary Matters**

Plaintiff claims that because Defendants have used mass punishment and encouraged inmate self-enforcement of the antidrug policy the safety of the general inmate population is threatened and violent attacks, tension, and anxiety among the population have increased. (Doc. 1, pp. 5, 6, 7, 9). He also alleges that during the shakedown, staff destroyed all microwave ovens in inmate housing units purchased with inmate funds and disposed of other inmates' property. *Id.* at p. 5. Plaintiff, however, is only entitled to assert his own rights. *Massey v. Helman,* 196 F.3d 727, 739-40 (7th Cir. 1999). Thus, the Court will only consider the alleged harms to Plaintiff, not to the inmate population generally.

## **Discussion**

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following seven counts:

**Count 1:** First Amendment retaliation claim against True, Stickles, and Huggins.

4

| | |
|---|---|
| **Count 2:** | First Amendment claim for violating Plaintiff's right to access the courts. |
| **Count 3:** | Fifth Amendment claim against True and Stickles for seizing and discarding Plaintiff's property during the penitentiary wide shakedown on April 3 and 4, 2019. |
| **Count 4:** | Eighth Amendment claim for cruel and unusual punishment against True, Stickles, and Huggins for implementing mass punishment on the entire inmate population. |
| **Count 5:** | Eighth Amendment claim against True, Stickles, and Huggins for failure to protect Plaintiff from threats against his safety. |
| **Count 6:** | Fourth Amendment claim against True and Stickles for unreasonable search and seizure during the penitentiary wide shakedown on April 3 and 4, 2019. |
| **Count 7:** | Tort claims pursuant to the Federal Tort Claims Act. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pleaded under the *Twombly*[1] pleading standard.**

### Count 1

Plaintiff claims that he was threatened with retaliation by Warden True, Captain Stickles, and Officer Higgins if he participated in a food strike in protest of the restrictions placed on the inmates. (Doc. 1, p. 8). He also states that in retaliation staff threatened to write "bogus 'shots,'" preform nuisance shakedowns, transfer him to a different housing unit, transfer him out of work or programming assignment and participation, and transfer him out of the institution for "diesel therapy." (Doc. 1-1, p. 13).

---

[1] *Bell Atlantic Crop. v. Twombly,* 550 U.S. 544, 570 (2007).

Plaintiff cannot bring a retaliation claim under the First Amendment against federal officials pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) in light of the Supreme Court's recent decision in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). *Ziglar* suggests that the only valid contexts for constitutional claims against federal officers are those previously recognized by the Court under the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. at 397, 91 S.Ct. 1999 (Fourth Amendment unreasonable search and seizure); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender discrimination); *Carlson v. Green,* 446 U.S. 14 (1980) (Eighth Amendment deliberate indifference to medical needs). The Supreme Court held that federal courts should not expand *Bivens* actions to reach contexts that the Supreme Court has not officially recognized unless "special factors" counsel otherwise. *Ziglar,* 137 S.Ct. at 1859-60. Plaintiff's First Amendment claim does not fit under any of the three scenarios recognized by *Bivens*. Further, the Supreme Court has stated the "[w]e have never held that Bivens extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658 (2012). The Seventh Circuit and this Court have also recently declined to extend *Bivens* to First Amendment claims. *Borowski v. Baird,* Case No. 16-cv-848-JPG, 2018 WL 6583976 (S.D. Ill. Dec. 14, 2018), *aff'd,* No. 19-1113, 2019 WL 2542750 (7th Cir. June 20, 2019); *White v. Inch,* Case No. 17-cv-1059-JPG, 2018 WL 6584899 (S.D. Ill. Dec. 14, 2018), *aff'd on other grounds,* No. 18-3720, 2019 WL 2542217 (7th Cir. June 20, 2019); *see also Sebolt v. Samuels,* 749 F. App'x 458, 459 (7th Cir. 2018) (suggesting in dicta that there is no *Bivens* remedy for First Amendment violations). In fact, "[n]ationwide, district courts seem to be in agreement that, post-*Abassi,* prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *Harris v. Dunbar,* Case No. 17-cv-536-WTL, 2018 WL 3574736, at * 3 (S.D. Ind. July 25, 2018). Neither are there any "special factors" in this case that would urge expanding *Bivens* here. These include questions like "whether the Judiciary is

well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damage action to proceed," and whether "there is an alternative remedial structure present in a certain case." *Ziglar*, 137 S.Ct. at 1858. Consistent with the Court's previous rulings, the Court declines to extend *Bivens* to Plaintiff's retaliation claim.

The Court further notes that assuming Plaintiff could bring his First Amendment claim, he has not provided enough facts to support a retaliation claim which requires him to prove that he engaged in conduct protected by the First Amendment, that he suffered a deprivation that would likely deter future protected activity, and that the protected conduct was a motivating factor for taking the retaliatory action. *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009).

To the extent that Plaintiff is arguing that the threats by Defendants amounted to cruel and unusual punishment under the Eighth Amendment, this claim also fails. Plaintiff does not provide enough information regarding either instance of threats. In the first instance of retaliation, he states that staff threatened him with retaliation if he participated in the food strike and states that "'Staff' includes Defendants," but does not specify what each defendant did, said, or threatened. (Doc. 1, p. 8). In the other claim of retaliation, Plaintiff attributes the threats simply to "staff." (Doc. 1-1, p. 13). The allegations are too vague to support a claim against the Defendants.

Accordingly, Count 1 fails to state a claim upon which relief may be granted and shall be dismissed without prejudice.

**Count 2**

Plaintiff claims he has been denied access to the courts, but as previously mentioned, the Seventh Circuit has suggested and affirmed district court rulings holding that there is not a remedy under *Bivens* for violations of the First Amendment. *See Sebolt,* 749 F. App'x at 459. Even if Plaintiff's claim could be brought under *Bivens,* he does not associate this claim with any

7

Defendants or describe what conduct caused a detriment to his ability to pursue a claim or defense in court. Claims must be supported by more than conclusory statements. For these reasons, Count 2 is dismissed without prejudice.

**Count 3**

Plaintiff claims that during the shakedown on April 3 and 4, 2019, his personal property was discarded depriving him of his property without due process of law in violation of the Fifth Amendment. A claim for relief premised on due process violations where the prisoner had alternative remedies is also not recognized by the Seventh Circuit in a *Bivens* action. *Goree v. Serio,* 735 Fd. App'x 894, 895 (7th Cir. 2018). Other administrative procedures are available to potentially compensate a federal inmate for the loss of property. *See* 31 U.S.C. §§ 3723-3724; *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 n. 7 (2008); *United States v. Norwood*, 602 F.3d 830, 836 (7th Cir. 2010). Accordingly, the due process claim in Count 3 shall be dismissed without prejudice.

**Count 4**

Plaintiff asserts that because of the mass punishment implemented by Warden True he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment. While an inmate, under the Eighth Amendment, does have a constitutional right to be provided with "adequate food, clothing, shelter, and medical care," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), Plaintiff has not alleged that the limitations on commissary spending or phone or email use has denied him basic necessities. A loss of privileges such as commissary or telephone does not amount to a constitutional deprivation. *See James v. Milwaukee Cty.,* 956 F.2d 696, 699 (7th Cir. 1992)("a prisoner who is denied a pack of playing cards or a television set has not set out a

deprivation of constitutional dimensions under the eighth amendment."); *see also Thomas v. Ramos,* 130 F.3d 754, 762 n. 8 (7th Cir. 1997).

Further, to the extent that Plaintiff is arguing a due process violation since the limitations on commissary, phone calls, and emails where imposed on inmates who were not involved in the drug overdoses, this claim also fails. Again, a claim of due process violations where there are alternative remedies through the BOP's administrative remedies program cannot be brought pursuant to *Bivens*. *See Goree,* 735 F. App'x at 895. In general, prisoners have no due process liberty interest in visitation, commissary, and telephone privileges. *Barian v. Hollingsworth,* Case No. 10-591-GPM (S.D. Ill., Jan. 1, 2011) (citations omitted).

In addition to the restrictions on phone, email, and commissary privileges, Plaintiff claims in an attached exhibit[2] that during the lockdown inmates were given nutritionally inadequate meals as a form of corporal punishment, "no hot meals for six days, small portions." (Doc. 1-1, p. 11). The Constitution requires that inmates receive adequate amounts of nutritious food. *See Farmer,* 511 U.S. at 832; *Antonelli v. Sheahan,* 81 F.3d 1422 (7th Cir. 1996). But Plaintiff alleging that the food was nutritionally inadequate because the portions were small and the food was not hot does not rise to the level of a constitutional deprivation. *See Burris v. Justus*, Case No. 14-cv-990-JPG (S.D. Ill., Oct. 28, 2014; *Bustillo v. Caraway,* Case No. 13-cv-262-JMS-WGH (S.D. Ind., Dec. 12, 2013). Also, Plaintiff claims that "inmates" were given nutritionally inadequate food, but fails to provide information regarding how *his* rights were violated.

---

[2] Because it appears that Plaintiff is relying on statements made in the Complaint and attached exhibits in asserting his claims, the Court is construing the allegations in all of these pleadings together. *See Otis v. Demarasse,* 886 F.3d 639, 644 (7th Cir. 2018).

Accordingly, his claims under Count 4 of cruel and unusual punishment resulting from the mass punishment imposed by Defendants are dismissed without prejudice.

**Count 5**

Plaintiff claims that Defendants have displayed deliberate indifference and failed to provide for his safety by encouraging inmate on inmate violence, resulting in an increase in assaults at USP Marion and "threatening the safety of the general inmate population." (Doc. 1, p. 9). While Plaintiff does have an Eighth Amendment right to be protected from attacks at the hands of other inmates and does not need to suffer an actual attack to secure prospective relief, he must still allege facts indicating that he is incarcerated under conditions imposing a sufficient risk of serious harm. *Farmer,* 511 U.S. at 845. A, vague, general fear of harm that is not based on a specific threat is not enough to state a cause of action for deliberate indifference or failure to protect.

In this case, Plaintiff provides examples of incidents where other inmates have been attacked and states that he is in fear of his physical safety and suffers from anxiety. He does not provide, however, information regarding threats to *his* own safety. Threats of violence may provide evidence of a defendant's deliberate indifference, but the only allegation of an actual threat to Plaintiff by other inmates occurred when he was threatened with violence if he did not participate in a food strike. He states in the Complaint that he did not participate in the food strike, but does not allege that as a result of not participating he was attacked or subjected to violence or further threats. (Doc. 1, p. 8). Because his claim fails to show that he was personally at risk of an attack and that Defendants were aware of that specific risk and failed to act, Count 5 shall be dismissed without prejudice.

**Count 6**

Plaintiff asserts that he has a property claim under the Fourth Amendment. In general, prisoners do not have protection from unreasonable searches under the Fourth Amendment. As the Supreme Court of the United States has explained, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984). Since the Fourth Amendment has no application within prison cells, Count 6 is dismissed without prejudice.

**Count 7**

A federal prisoner may recover damages in federal court for personal injury caused by the negligence of a federal employee, if a suit is properly brought under the FTCA. 28 U.S.C. § 1346(b). A plaintiff may not maintain a suit pursuant to the FTCA, however, unless he has first presented his claim to the appropriate federal agency for administrative review, and the agency has denied the claims. 28 U.S.C. § 2675(a). Although typically affirmative defenses such as failure to exhaust administrative remedies are litigated by the parties after service, a Court may invoke this defense on Section 1915A review when the availability of the defense is apparent on the face of the complaint. *Walker v. Thompson,* 288 F.3d 1005, 1010 (7th Cir. 2002).

Plaintiff states that he "reserves the right to amend this complaint to add claims for relief upon exhaustion of a pending FTCA claim" and that he may add an amendment regarding a property claim "after a separate FTCA claim is exhausted." (Doc. 1, pp. 1, 9). He also alleges that there are possible state tort actions involved in his claims, but fails to provide any supporting facts. Because Plaintiff admits that he has not exhausted his administrative remedies, any claims brought under the FTCA are dismissed without prejudice.

**Leave to Amend**

Plaintiff's Complaint does not survive preliminary review and shall be dismissed. He will have an opportunity to re-plead his claims in a First Amended Complaint, however, if he wishes to proceed any further with this action. When preparing a First Amended Complaint, Plaintiff should identify each defendant in the case caption and set forth sufficient allegations against each defendant to describe what the defendant did, or failed to do, to violate *his* constitutional rights.

Furthermore, if Plaintiff wishes to pursue an FTCA lawsuit and has not yet completed the administrative claim process required before bringing suit under the FTCA, he must file a new lawsuit to bring the FTCA claim, after the claim has been administratively exhausted. He cannot present an FTCA claim in this action unless he has already exhausted the administrative process, because a lawsuit prematurely filed prior to exhaustion must be dismissed. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

**Class Action**

Plaintiff seeks certification of a class action for his claims. As those claims are dismissed, his Motion for Class Action and Certification (Doc. 3) is **DENIED** as **MOOT.**

**Recruitment of Counsel**

Plaintiff included with his Motion to Certify as Class Action a request for recruitment of counsel. (Doc. 3). This request is **DENIED**. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (articulating test for recruiting counsel). Plaintiff appears to have made reasonable efforts to retain counsel on his own, providing the Court copies of letters he has mailed to six different law firms. (Doc. 13). But the Court finds that Plaintiff is competent to litigate this matter without representation at this time. Other than citing Federal Rule of Civil Procedure 23(g), requiring the

Court to appoint class counsel when it certifies a class action,[3] Plaintiff provides no information regarding why he is unable to proceed *pro se*, and given the early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel. The Court encourages Plaintiff to renew his request for the appointment of counsel at a later date.

**Disposition**

**IT IS HEREBY ORDERED** that the Complaint (including **COUNTS 1, 2, 3, 4, 5, 6,** and **7**) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERD** that the Motion for Class Action and Certification (Doc. 3) is **DENIED** as **MOOT** and the request for recruitment of counsel (Doc. 3) is **DENIED** without prejudice.

Plaintiff is **GRANTED** leave to file a "First Amended Complaint" on or before July 24, 2019. Should Plaintiff fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan,* 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall also count as one of Plaintiff's three allotted "strikes" under 28 U.S.C. § 1915(g).

It is strongly recommended that Plaintiff use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 19-cv-00454-JPG). To enable Plaintiff to comply with this Order,

---

[3] Rule 23(g) is only implicated when a class is first certified under Ruled 23(a). "[T]he purpose of Rule 23(g) is not to enable *pro se* plaintiffs to obtain recruited counsel in conjunction with class certification; the purpose of the rule is to ensure that the *proposed* class counsel is adequate." *Howard v. Pollard,* 814 F.3d 476, 478 (7th Cir. 2015).

the **CLERK** is **DIRECTED to** mail Plaintiff a blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint must stand on its own without reference to any previous pleading. Plaintiff must re-file any exhibits he wishes the Court to consider. The First Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of whether Plaintiff files a First Amended Complaint. 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

 **IT IS SO ORDERED.**

 **DATED: June 26, 2019**

            **s/J. Phil Gilbert**
            **J. PHIL GILBERT**
            **United States District Judge**