IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES R. KAMMEYER, JR., PHILLIP CARRIER, and ALL INMATES HOUSED AT USP MARION, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 19-cv-00454-JPG ) ) |
| vs. | ) ) |
| WILLIAM TRUE, D. STICKELS, DANIEL HUGGINS, BASLER, and UNITED STATES OF AMERICA, | ) ) ) ) ) |
| Defendants. | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiffs James Kammeyer and Phillip Carrier, inmates with the Federal Bureau of Prisons ("BOP") who are currently incarcerated at the United States Penitentiary located in Marion, Illinois ("USP Marion"), bring this civil rights action alleging violations of their constitutional rights by persons acting under the color of federal authority that occurred in connection with prison restrictions imposed after several incidents involving drug overdoses. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). (Doc. 15). Plaintiffs seek injunctive relief and monetary damages. Before the Court is the First Amended Complaint (Doc. 15), Plaintiff Kammeyer's Motion to Correct the Amended Complaint (Doc. 17), and Motion to take Judicial Notice and to Appoint Counsel (Docs. 18 and 19).

1

**Procedural Background**

The original Complaint in this case (Doc. 1) was filed by *pro se* plaintiff James Kammeyer. Following an initial screening of the Complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed the Complaint for failure to state a claim for relief and granted Plaintiff Kammeyer leave to file an amended complaint. (Doc. 14). On July 23, 2019, Plaintiff Kammeyer along with an additional Plaintiff, Phillip Carrier, filed the First Amended Complaint. (Doc. 15). Both Plaintiffs signed the First Amended Complaint, but only Plaintiff Kammeyer paid the filing fee. The Court issued an order advising Plaintiffs of the consequences of bringing claims jointly in a single lawsuit, including their filing fee obligations, and giving Plaintiff Carrier an opportunity to withdraw from the case or sever his claims into an individual action by August 28, 2019. (Doc. 16, p. 5). Plaintiff Kammeyer then filed two identical motions titled Motion to Take Judicial Notice and to Appoint Counsel. (Doc. 18 and 19).

**The First Amended Complaint**

The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.,* 577 F. 3d 816, 821 (7th Cir. 2009).

In the First Amended Complaint, Plaintiffs make the following allegations: Due to several drug overdoses occurring at USP Marion from March 30, 2019, until April 8, 2019, the entire facility was placed on lockdown status. (Doc. 15, p. 11). Additionally, the following sanctions

were implemented on the entire inmate population: (1) inmates would be limited to one five-minute phone call and five outgoing emails per day; and (2) the monthly commissary spending limit would be reduced from $360 to $100. (*Id.*). Inmates were also directed to pack three trash bags with their personal belongings: (1) one for personal property; (2) one for institution-issued clothing; and (3) one for excess personal property, which could be mailed home at the inmate's own expense. (*Id.* at p. 12). After all inmates packed their bags, USP Marion staff conducted a shakedown of the entire facility. (*Id.*). During the shakedown, staff threw away excess personal property into trash bins and did not provide information regarding the ability to mail excess property home or provide confiscation forms for any property seized in violation of BOP policy. (*Id.* at pp. 12-13). Staff also destroyed all microwave ovens in inmate housing units that had been purchased with inmate funds. (*Id.* at p. 13).

After the lockdown ended on April 9, 2019, more inmates overdosed and Warden True lowered the monthly commissary spending limit to $75. (*Id.*).

During the week of April 8, 2019, Plaintiff Kammeyer witnessed Warden True in the lunchroom become hostile toward inmates trying to speak with him. (*Id.*). He also heard Warden True tell inmates that "he wanted the drug problem solved 'however [inmates] have to do it,'… and that if the inmates wanted the mass sanctions lifted, inmates should 'enforce the rules' against other inmates who were suspected drug users or distributors." (*Id.* at p. 14).

Warden True, Captain Stickles, and S.I.S. Officer Huggins met collectively and individually with the heads of various inmate groups and "instructed them to 'police [their] own.' If inmates continued overdosing, they said, just drag them into a cell 'so we don't see it.'" (*Id.*). Warden True stated that there would not be consequences for anyone who acted, even violently, against drug users. (*Id.*).

Because True, Stickles, and Huggins directed inmates to attack one another and encouraged violence, Plaintiff Carrier was assaulted by his cellmate and lost the use of his left eye. (*Id.* at p. 16). Prior to the attack, he had asked counselor Basler for a new cell assignment, but was ignored. (*Id.* at pp. 9, 16, 17). He continued to be ignored by Huggins following the attack, when Plaintiff Carrier tried to talk to Huggins and other staff to try and figure out why the attack took place. (*Id.* at p. 16). Another inmate attacked Plaintiff Carrier again on June 18, 2019, soon after he expressed a desire to become a plaintiff in this lawsuit. (*Id.* at pp. 9, 16). Plaintiff Carrier was then placed in the Special Housing Unit. (*Id.* at p. 9).

True threatened to implement further restrictions and lock down the facility if inmates did not take part in stopping the drug abuse problem. (*Id.* at p. 18). Inmates, including Plaintiff Kammeyer, attempted to organize a food strike in protest of the restrictions. (*Id.*). Plaintiff Kammeyer was threatened with retaliation, if he participated, by True, Stickles, Huggins, and Balser and was also threatened with violence by other inmates. (*Id.*). Ultimately, Plaintiff did not participate. (*Id.*).

## **Preliminary Dismissal**

As an initial matter, the Court dismisses Plaintiff Carrier as a party to this case. Plaintiff Carrier signed the First Amended Complaint, but did not pay the filing fee or file a Motion for Leave to Proceed *in forma pauperis* ("IFP Motion"). Following the filing of the First Amended Complaint, the Court issued an order directing Plaintiff Carrier to notify the Court by August 28, 2019, if he wished to continue as a plaintiff in this action or pursue his claims individually in a separate lawsuit. (Doc. 16, p. 5). He was warned that that failure to respond to the Court Order by this deadline would result in the obligation to pay the full filing fee and dismissal from this

4

action for want of prosecution and/or failure to comply with a court order under Federal Rule of Civil Procedure 41(b). (*Id.*).

To date, Plaintiff Carrier has failed to pay the filing fee or file an IFP Motion, and the Court has received no communication from him since he filed, along with Plaintiff Kammeyer, a Motion to Correct an exhibit in the First Amended Complaint on August 2, 2019. (Doc. 17). In his Motion to Take Judicial Notice and to Appoint Counsel, Plaintiff Kammeyer asks the Court to consider that: (1) Plaintiff Carrier was placed in the Special Housing Unit after being attacked for a second time on June 18, 2019, and so has limited access to the outside world; (2) Plaintiff Carrier's corrective lenses are not sufficient to help him read; and (3) it is unlikely that the Court's Order, Doc. 16, requiring Plaintiff Carrier to respond by August 28, 2019, ever made it to him, or, if it did, he was not able to read the Order. (Doc 18, p. 2; Doc. 19, p. 2).

To the extent that Plaintiff Kammeyer's motions, Doc. 18 and 19, are asking the Court to consider the difficulties that Plaintiff Carrier might be experiencing in receiving, reading, and responding to the Court's Order, such request is **GRANTED**. The Court, however, will not allow this matter to linger indefinitely. The Clerk of Court was directed to send a copy of the Order to each Plaintiff. (Doc. 16, p. 6). The Court has neither received the Order back from Plaintiff Carrier as undeliverable, nor a request from Plaintiff Carrier for a time extension, and it has been over two months since his response deadline expired. Accordingly, Plaintiff Carrier and any claims he alleges in the First Amended Complaint shall be **DISMISSED without prejudice** for failure to comply with the Court's Order to notify the Court of his intention to pursue his claims in this action and file an IFP Motion or pay the filing fee. (Doc. 16, p. 5). *See* FED. R. CIV. P. 41(b).

**Discussion**

Based on the allegations in the First Amended Complaint, the Court finds it convenient to designate a single count in the *pro se* action:[1]

**Count 1:** Eighth Amendment claim against True, Stickles, Huggins, and Basler for cruel and unusual punishment for implementing mass punishment on the entire inmate population and directing and encouraging inmate on inmate violence.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pleaded under the *Twombly*[2] pleading standard.**

**Count 1**

The Eighth Amendment grants the right to be protected from cruel and unusual punishment, which includes attacks at the hands of other inmates. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). To succeed on a claim of cruel and unusual punishment a plaintiff must allege facts indicating that "(1) 'the harm to which the prisoner was exposed must be an objectively serious one'; and (2) judged subjectively, the prison official 'must have actual, and not merely constructive, knowledge of the risk.'" *Sinn v. Lemmon,* 911 F.3d 412, 419 (7th Cir. 2018) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

---

[1] In the merit review order of the original Complaint, the Court identified seven potential claims based on the alleged facts. *See* Doc. 14, pp. 4-5. Although the facts in the First Amended Complaint are very similar to the original Complaint, Plaintiff Kammeyer states that he wishes to only pursue one claim of cruel and unusual punishment against Defendants. (Doc. 15, pp. 6, 7, 22). Given this specific request, the Court identifies the claim here as Count 1. All other claims are considered dismissed without prejudice from this action.
[2] *Bell Atlantic Crop. v. Twombly,* 550 U.S. 544, 570 (2007).

Plaintiff Kammeyer claims that Defendants' actions of implementing various forms of mass punishment along with directing inmates to self-regulate the drug problem caused fear, mental anguish, and misery, exacerbating the violent conditions of prison life. (Doc. 15, p. 6). The immediate, specific threats of violence instigated by Defendants, coupled with active retaliation by their agents, also caused him to suffer from severe anxiety and panic attacks and exacerbated his PTSD. (*Id.* at pp. 6, 19). True, Stickles, Basler, and Huggins used the mass punishment to manipulate inmates into cooperating in their investigation of drug abuse and using violence against each other. (*Id.* at pp. 7, 20). Furthermore, they displayed deliberate indifference by encouraging the violence and "turning a blind eye when such assaults occur." (*Id.* at p. 6).

Plaintiff Kammeyer states that the threats he is experiencing are specific and real, not vague, as evidenced by: (1) the attacks, falsely labeled as "drug-related" that have happened to other inmates; (2) the harm caused to prisoners who are drug-addicted users unable to quit without help and left to the violent enforcement of other prisoners; and (3) the fact that prisoners are coerced into taking action against each other or get transferred to another prisoner. (Doc. 15, p. 19).

Plaintiff Kammeyer does not allege, however, that any of these incidences have actually happened personally to him. He does not claim that he has been attacked, that he is a drug user afraid of being attacked at any time by the other inmates, or that he has been threatened to "get shipped" unless he attacks another inmate. The only threats that were directed at him occurred when he allegedly was threatened with some type of retaliation by Defendants and violence by other inmates if he participated in a food strike to protest the sanctions imposed on the entire prison population. (Doc. 15, p. 18). Following the threats, Plaintiff Kammeyer does not allege that Defendants actually did retaliate against him or that he was attacked. "Standing alone, simple

7

verbal harassment does not constitute cruel and unusual punishment." *DeWalt v. Carter,* 224 F.3d 307, 612 (7th Cir. 2000). Additionally, the Seventh Circuit has stated that "it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Babcock v. White,* 102 F.3d 267, 271 (7th Cir. 1996) (holding that because plaintiff was not assaulted and the issue of present danger was not before the court, plaintiff did not have an Eighth Amendment claim). Because Plaintiff Kammeyer only alleges a fear of assault, his claim is insufficient to survive review. *See Id.* at 272; *Doe v. Welborn,* 110 F.3d 520, 523 (7th Cir. 1997) (holding that plaintiff's claim of psychological harm suffered from living in constant fear of assault did not support a claim under the Eighth Amendment).

For these reasons, the First Amended Complaint does not survive screening under 28 U.S.C. § 1983. *Pro se* plaintiffs are afforded great deference, but this Court is not required to allow them to amend *ad nauseam* where doing so would be futile. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013); *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994). Plaintiff Kammeyer has been given two opportunities to state a viable claim and has failed to do so. Accordingly, the First Amended Complaint and this action as it pertains to Plaintiff Kammeyer shall be dismissed with prejudice for failure to state a claim upon which relief may be granted. Plaintiff Kammeyer shall receive one of his three allotted "strikes" under 28 U.S.C. § 1915(g) and will not be granted leave to amend.

## Disposition

**IT IS HEREBY ORDERED** that as to Plaintiff **KAMMEYER** the First Amended Complaint and this action are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

Plaintiff **KAMMEYER** is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that Plaintiff **CARRIER** and his claims are **DISMISSED** from this action **without prejudice** for failure to comply with a court order and/or failure to prosecute his claims under Federal Rule of Civil Procedure 41(b).

Plaintiff **CARRIER** is **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time that the First Amended Complaint was filed, thus the filing fee of $400.00 remains due and payable. *See* Doc. 16, p. 5; 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS FURTHER ORDERED** that, for the reasons provided, Motion to Take Judicial Notice and to Appoint Counsel is **GRANTED** in part and **DENIED** in part. (Docs. 18 and 19). In light of the Court's dismissal of this action, the request for recruitment of counsel (Doc. 18, pp. 3-4; Doc. 19, pp. 3-4), the Second Motion for Preliminary Injunction (Doc. 15-1), and the Second Motion to Certify Action as Class Action (Doc. 15-1) are **DENIED** as **MOOT**. The Clerk of Court is **DIRECTED** to refile pages 118 through 124 of Doc. 15-1 as "Second Motion for Preliminary Injunction as filed by James R. Kammeyer, Jr. and Phillip Carrier" and to refile pages 125 through 131 of Doc. 15-1 as "Second Motion to Certify Action as Class Action as filed by James R. Kammeyer, Jr. and Phillip Carrier."

The Motion to Correct (Doc. 17) is **GRANTED**. The Clerk of Court is **DIRECTED** to rename Doc. 17 as "Exhibit to Amended Complaint, Doc. 15".

If a Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty (30) days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* MUST set forth the issues the Plaintiff plans to present on appeal. *See*

Fed. R. App. P. 24(a)(1)(C). If a Plaintiff does chooose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. Finally, if the appeal is found to be nonmeritorious, the Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: November 4, 2019**

                                                           s/J. Phil Gilbert
                                                           **J. PHIL GILBERT**
                                                           **United States District Judge**